UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MARVIN LAGARDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-4004 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court *sua sponte* for reconsideration of the portion of Magistrate Judge Gorman's January 21, 2010 Order granting the United States' Motion to Substitute itself as Defendant in place of Sang Kim. (Doc. 8). On July 19, 2010, the Court gave Plaintiff the opportunity to file a brief and evidence by August 13, 2010 on the issue of whether Sang Kim was acting in the scope of his federal employment when he committed the acts alleged in Plaintiff's Complaint; Plaintiff filed no brief or additional evidence. (Doc. 14). For the reasons explained below, Magistrate Judge Gorman's Order granting the United States' Motion to Substitute itself as Defendant is affirmed.

### BACKGROUND

On November 25, 2009, Plaintiff filed a Complaint against Mr. Kim, a federal employee, in the Circuit Court of the Fourteenth Judicial Circuit in Rock Island County, Illinois. (Doc. 1-2). As explained in this Court's July 19, 2010 Order & Opinion, under the Federal Tort Claims Act, as amended by the "Westfall Act," a

federal employee is personally immune from suits alleging that he has committed state common law torts, if those actions took place within the scope of his federal employment; the matter is removed to federal district court and the United States is substituted for the employee as defendant. 28 U.S.C. § 2679(b)(1), (d)(1). Removal and substitution of defendants begins with a Certification filed by the Attorney General or his delegate that the employee's conduct was within the scope of his federal employment, which was filed in this case. 28 U.S.C. § 2679(d)(2). On January 8, 2010, the United States, on behalf of Mr. Kim, filed a Certification of Scope of Employment by Acting United States Attorney Jeffrey B. Lang and removed the matter to this Court, pursuant to 28 U.S.C. § 2679(d)(2).[1] (Doc. 1). Mr. Lang's Certification stated that Mr. Kim was acting in the scope of his employment with the United States Army at all times relevant to the Complaint. (Doc. 5-1). The United States, acting on behalf of Mr. Kim, on January 19, 2010, filed a Motion

---

[1] 28 U.S.C. § 2679(d)(2): "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal."

The Attorney General has delegated authority to certify scope of employment to the United States Attorneys. 28 C.F.R. § 15.4(a).

to Substitute itself as Defendant for Mr. Kim under 28 U.S.C. § 2679(d)(2).[2] (Docs. 6 & 7).

On January 29, 2010, Defendant filed a Motion to Dismiss Plaintiff's suit, arguing that Plaintiff had failed to exhaust his administrative remedies as required by the Federal Tort Claims Act. (Docs. 9 & 10). Plaintiff responded in opposition to this Motion to Dismiss, arguing that Mr. Kim was not acting within the scope of his employment and that the Federal Tort Claims Act was therefore inapplicable; Plaintiff did not dispute that he has not exhausted his administrative remedies. (Docs. 11 & 12). The Court ordered the United States to file a reply to Plaintiff's response, which it did, addressing Plaintiff's arguments in the Response, and providing additional evidence and documentation on the scope of employment issue. (Doc. 13). On July 19, 2010, finding that the scope of employment question must be revisited, the Court denied the Motion to Dismiss without prejudice as premature, and with leave to refile. (Doc. 14). As explained in the Court's July 19, 2010 Order & Opinion, judicial review of the scope of employment certification is proper, but here Magistrate Judge Gorman ruled on the United States' Motion to Substitute Party only two days after it was filed, and Plaintiff thus did not have the chance to respond in opposition to the Motion to Substitute. Therefore, there was no meaningful judicial review of the scope of employment certification, and such review

---

[2] Plaintiff also sought remand of his case to state court, in both an independent Motion to Remand and in his Response to Defendant's Motion to Dismiss. (Docs. 3, 11-12). As explained in the Court's July 19, 2010 Order & Opinion, once the Certification is filed, removal is automatic and cannot be reversed. (Doc. 14 at 5).

should be provided.³ *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432, 434 (1995); *Taboas v. Mlynczak*, 149 F.3d 576, 579 fn. 1, 580-81 (7th Cir. 1998); *Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir. 1991).

## SCOPE OF EMPLOYMENT

Plaintiff bears the burden of persuading the Court that Mr. Kim was not acting in the scope of his employment when he made the statements alleged in the Complaint. *Taboas*, 149 F.3d at 582 (*citing Snodgrass v. Jones*, 957 F.2d 482, 487 fn. 3 (7th Cir. 1992); *Hamrick*, 931 F.2d at 1211 (7th Cir. 1991) (*citing S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990)).⁴ Where a motion for substitution of defendants "contends that, even accepting the allegations of the complaint as true, the defendant acted within the scope of employment," it may be decided on the face of the complaint. *Taboas*, 149 F.3d at 580 (*citing McHugh v. University of Vermont*, 966 F.2d 67, 74-75 (2d Cir. 1992)).

> In the alternative, the motion for substitution may be decided by reference to affidavits and other evidence outside the pleadings (akin

---

³ As is also explained in the Court's July 19, 2010 Order & Opinion, Plaintiff is not *entitled* to this Court's review of the Magistrate Judge's decision, as he failed to timely object to it; the Court has undertaken this review *sua sponte*. (Doc. 14 at 6-7).

⁴ Plaintiff cites to an Eastern District of New York case for the proposition that the Court, in reviewing a scope of employment certification, "must view the tortious conduct in the light most favorable to plaintiff." (Doc. 12 at 3 (*quoting Asto v. Mirandona*, 372 F.Supp.2d 702, 707 (E.D. N.Y. 2005)). First, under Seventh Circuit precedent, the burden is clearly on Plaintiff to show that Mr. Kim was not acting in the scope of his employment. *Taboas*, 149 F.3d at 582. In addition, the Eastern District of New York itself qualified that statement, by noting that it means that "the government may not deny that acts were within the scope of employment by denying that the acts occurred." *Asto*, 372 F.Supp.2d at 707 (*quoting McHugh v. Univ. of Vermont*, 966 F.2d 67, 74 (2d Cir. 1992)). Here, Defendant does not deny that Mr. Kim made the statements alleged.

to a summary judgment motion) if the movant contests the facts as pled and the plaintiff is unable to demonstrate that a genuine issue of material fact exists with respect to scope of employment.

*Id.* at 581 (*citing Maron v. United States*, 126 F.3d 317, 322 (4th Cir. 1997); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir. 1994); *Wood v. United States*, 995 F.2d 1122, 1129 (1st Cir. 1993)). *See also Snodgrass*, 957 F.2d 482, 484 (7th Cir. 1992) (*quoting Stevenson Olds Sales and Service v. Industrial Com. of Illinois*, 489 N.E.2d 328, 330 (3d Dist. 1986) ("Under Illinois law, 'where the essential facts are undisputed, whether an injury arose out of and in the course of employment presents a question of law.'"). Finally, if there are disputed factual issues that are material to the disposition of the scope of employment question, then "the district court may hold an evidentiary hearing to resolve material factual disputes related to the scope of employment." *Id.*; *Godbout*, 2004 WL 442601, *3 ("plaintiff is entitled to an evidentiary hearing (and presumably limited discovery) to resolve material factual disputes related to scope of employment").

In its Reply in support of the Motion to Dismiss, Defendant provided additional argument and evidence that Mr. Kim was acting in the scope of his employment when he committed the acts alleged in Plaintiff's Complaint, but did not contradict the facts presented in the Complaint. As noted above, Plaintiff has not provided any additional argument or evidence to contradict that provided by Defendant, though he was given the opportunity to do so, and so the Court assumes that Plaintiff does not have any factual dispute with the evidence as provided by

5

Defendant.  Therefore, the Court may decide the matter on the basis of the evidence provided by Defendant.

Plaintiff has been employed by the United States Army since March 2008 at the Army Armament Research and Development Engineering Center ("ARDEC") in Rock Island, Illinois.  (Terronez Decl. at 1).  He was temporarily assigned to work as a Quality Assurance Specialist in Mosul, Iraq from June to November 2008, under Mr. Kim's supervision.  (Kim Decl. at ¶¶ 3, 4, 7).  In his Complaint, Plaintiff alleged that Mr. Kim defamed him and intentionally interfered with his prospective business opportunities through an email on December 11, 2008 to Plaintiff's supervisor, Steve Terronez, at the Rock Island Arsenal.  (Doc. 1-2).  Plaintiff contends that this email, in which Mr. Kim allegedly informed Plaintiff's supervisor that Plaintiff had falsely represented the duties he had performed in Iraq and that he had failed to properly perform his duties, was false and defamatory, and was sent with the intent of impeding Plaintiff's future employment opportunities with the Army.  (Doc. 1-2 at ¶¶ 5, 9).  He also alleges that Mr. Kim's statements were "malicious in that he knew they were false or acted in reckless disregard for their truth," and that they "were intentional and malicious in that he had no personal knowledge of the facts that he accused plaintiff of misrepresenting and he had expressed an extreme animosity toward the plaintiff."  (Doc. 1-2 at ¶¶ 8, 11).

Defendant admits that Mr. Kim, stationed in Balad, Iraq, did not personally observe Plaintiff's work in Mosul.  (Kim Decl. at ¶¶ 8-9).  After Plaintiff returned to the United States, Mr. Kim learned from Plaintiff's replacement, Troy Morris, that

Plaintiff did not arrange for Mr. Morris' transportation and housing as instructed, had no filing system, and had no required reference manuals. (Kim Decl. at ¶¶ 8-10). In addition, Plaintiff had allowed contractors to use a stamp indicating that vehicles had been fully inspected by Army staff, in a violation of policy. (Kim Decl. at ¶ 11) Mr. Morris also informed Mr. Kim that, because Plaintiff sometimes could not be found, vehicles were sometimes released to the troops without a final inspection. (Kim Decl. at ¶ 12). Finally, Ms. Leonard, another supervisor of Plaintiff's, informed Mr. Kim that Plaintiff resisted her instructions to document contractors' deficiencies. (Kim Decl. at ¶ 13).

On November 27, 2008, Mr. Kim, having received this information about Plaintiff's work in Mosul, sent an email to Mr. Terronez and another person explaining that three of the four employees from Rock Island had performed their duties well, but that Plaintiff had not.[5] (Doc. 13 at 9-10). Because Plaintiff had not lived up to the expected standards, Mr. Kim asked that, if Plaintiff volunteered for another overseas assignment, that his performance in Mosul be taken into consideration. (Doc. 13 at 10). Around December 2, 2008, Mr. Terronez spoke with Plaintiff about Mr. Kim's email, and gave him a copy of it. (Terronez Decl. at 2).

In early December 2008, Mr. Terronez asked Plaintiff to relate his 2008 work performance to him as part of Plaintiff's annual performance appraisal. (Terronez

---

[5]   In its Reply in support of its Motion to Dismiss, Defendant provided a copy of this email and the two that followed it, which were apparently attached to Plaintiff's state-court Complaint as an exhibit, but which was not submitted when the case was removed to this Court. (Doc. 13-1 at 8-10). Again, the Court notes that Plaintiff does not dispute the authenticity of these emails as provided by Defendant, though he was given the opportunity to do so.

Decl. at 2). Plaintiff informed Mr. Terronez that he had worked as Acting Site Lead and served as an investigating officer in Mosul. (Terronez Decl. at 2). Because both of these duties were outside the scope of Plaintiff's position, and because he knew that Mr. Kim had been dissatisfied with Plaintiff's performance, Mr. Terronez was surprised that Mr. Kim would have assigned Plaintiff to these duties. (Terronez Decl. at 2). On December 11, 2008, Mr. Terronez requested information via email from Mr. Kim about these reported duties. (Terronez Decl. at 2; Doc. 13-1 at 8-9). Mr. Kim's reply, also on December 11, 2008, states that, after checking with Ms. Le[o]nard, he could not confirm that Plaintiff had undertaken either of the two duties he reported to Mr. Terronez, that the first of such duties would have interfered with his other work and would have been beyond the scope of the work he was assigned to, and that, as to the second of the duties, Mr. Kim had never been informed of Plaintiff's qualifications to perform it. (Doc. 13-1 at 8). Mr. Kim also expressed his concerns that the inquiry from Mr. Terronez indicated that Plaintiff may not have been performing the work "as contracted," and that employees such as Plaintiff may have been assigned to additional work without Mr. Kim's knowledge. (Doc. 13-1 at 8). As noted by Mr. Terronez, Mr. Kim did not dispute that Plaintiff had in fact been assigned these duties.[6] (Terronez Decl. at 2). Only the December 11, 2008 reply from Mr. Kim is the subject of Plaintiff's Complaint. (Doc. 1-2 at 2).

---

[6] Mr. Terronez goes on to state that Mr. Kim's email did not change the rating he gave to Plaintiff in his annual performance appraisal. (Terronez Decl. at 2).

8

Both parties agree that Illinois law governs the scope of employment question. (Doc. 12 at 3; Doc. 13 at 13). In Illinois, "No precise definition has been accorded the term 'scope of employment,' but broad criteria have been enunciated:"

> "(1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, …
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

*Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989) (*quoting Sunseri v. Puccia*, 422 N.E.2d 925 (Ill. App. 1981); RESTATEMENT (SECOND) OF AGENCY § 228 (1958)) (alteration in original). In his Response to Defendant's Motion to Dismiss, Plaintiff argues that Mr. Kim "had no privilege to maliciously defame" him under Illinois law, and was thus not acting in the scope of his employment when he emailed Mr. Terronez about Plaintiff, as his conduct was not "actuated by a purpose to serve the master." (Doc. 12 at 2). He does not contest that Mr. Kim's communications to Mr. Terronez were of the kind he was employed to perform and that they occurred substantially within the authorized time and space limits, both of which appear obvious on the facts of this case.

In support of its argument that Mr. Kim was acting in the scope of his employment, Defendant provides the sworn statements of Mr. Kim, Mr. Terronez, and Nancy Lane, Director of the North Central Region of the U.S. Army Civilian Human Resources Agency, who is responsible for Army personnel programs. Mr.

Kim stated that he initially wrote to Mr. Terronez because he "was concerned that taxpayer's [*sic*] money which was spent on the military vehicle programs was not being adequately safeguarded and the safety of our troops could have been put in jeopardy by Mr. LaGarde's omissions." (Kim Decl. at ¶ 16). Mr. Kim further stated that he "did not harbor any personal animosity towards" Plaintiff. (Kim Decl. at ¶ 23). Mr. Terronez, likewise, stated that the comments in Mr. Kim's first email to him (which, again, is not the subject of the Complaint) "were an appropriate communication because they provided information for me as Mr. LaGarde's permanent supervisor to assess his annual performance. Further, Mr. Kim's comments addressed the quality of support provided by ARDEC as an organization to our overseas customers, to assist us in assessing the overall success of our mission." (Terronez Decl. at 2). Finally, Ms. Lane stated that both of Mr. Kim's communications to Mr. Terronez "are the type of normal, routine communications I expect to see between supervisors who share oversight of a civilian employee during temporary deployment…There is nothing irregular, improper, or inappropriate about their email correspondence." (Lane Decl. at 2). She noted that "[i]t is incumbent upon the temporary deployment supervisor to alert the permanent supervisor whenever there is a concern about a deployed employee's performance or conduct." (Lane Decl. at 2).

    Illinois law provides that an employee's actions in "[b]ringing a supervisor's perceived misfeasance to the attention of his superiors is among the duties that an employee may reasonably be expected to perform," even if the reporting employee is

wrong about the suspected misfeasance. *Taboas*, 149 F.3d at 582 (*citing Buechele v. St. Mary's Hosp. Decatur*, 509 N.E.2d 744, 746 (Ill.App. 1987); *Ramsey v. Greenwald*, 414 N.E.2d 1266, 1272 (Ill. App. 1980)). In *Taboas*, employees reported that they feared violent retaliation from the plaintiff for complaints of discrimination; following an investigation, the employer determined that their fears were baseless, and the plaintiff brought a defamation suit against them. *Id.* at 578. Though the plaintiff in *Taboas* alleged that the employees' reports were made "with malice and in bad faith," the Seventh Circuit held that the employees were acting in the scope of their employment, noting that "[e]ven if the defendants were motivated primarily by ill will towards Taboas, their actions nevertheless fall within the scope of employment so long as they are 'actuated, at least in part, by a purpose to serve the master.'" *Id.* at 583 (*quoting Pyne*, 543 N.E.2d at 1308; *citing Randi F. v. High Ridge YMCA*, 524 N.E.2d 966, 970 (Ill.App. 1988)). The court held that the employees' reports were 'actuated, at least in part, by a purpose to serve the master," because they "at least in part promoted the employer's interest in a safe workplace." *Id.* at 582.

Plaintiff cites to *Ramsey*, in which an Illinois appellate court held that "malicious defamation" was not within the scope of employment.[7]  414 N.E.2d at

---

[7]  Plaintiff also cites to an unreported Eleventh Circuit decision applying Georgia law for support of his argument. (Doc. 12 at 6-7).  Whatever the applicability of this case to the instant matter, which is dubious because of the case's unpublished status, out-of-Circuit source, and reliance on Georgia law, it does not help Plaintiff's argument. In *Schiefer v. United States*, the Eleventh Circuit found that, where there "no business related reason" for the defendant employee to share  the allegedly defamatory information in question about the plaintiff, the defendant employee had acted outside the scope of his employment.  07-14370, 2008

1273. The *Ramsey* court defined "malicious defamation" for this purpose as statements made "with knowledge that [the] statements were false or with reckless disregard of whether they were false or not." *Id*. Plaintiff places great weight on the fact that Mr. Kim's communications to Mr. Terronez were based on "hearsay" from other Army employees, rather than on his personal observations of Plaintiff, which he argues is evidence that the communications were made with knowledge that they were false or with reckless disregard of their accuracy. (Doc. 12 at 5-6). Communications between employees regarding work matters are not subject to the rules of evidence applicable in a courtroom setting - it is both reasonable and proper for a supervisor to rely on the reports of other employees when making a report to another supervisor. There is no indication that Mr. Kim had any reason to believe that the information on which he relied was suspect in any way; there is simply no evidence that he acted either with knowledge that the reports were false or with reckless disregard to whether they were false. Indeed, in *Taboas*, the defendant employees were found to have "relied on unsubstantiated hearsay and not first-hand knowledge, and much of their information had been fed to them by a disgruntled security employee," but the Seventh Circuit held that this "sheds little light on the defendants' subjective motivations other than to note the defendants'

---

U.S. App. LEXIS 11678, *9 (11th Cir. May 29, 2008). Moreover, in that case, the defendant employee denied making the allegedly defamatory statements. *Id*. at 8. Here, in contrast, Mr. Kim does not deny making the statements in the email, and Defendant has put on sworn testimony from Mr. Kim, Mr. Terronez, and Ms. Lane that there were legitimate business reasons for Mr. Kim to send the email complained of to Mr. Terronez.

tendency to rely on unsubstantiated hearsay;" it was not a basis for finding that their conduct was outside the scope of employment. *Taboas*, 149 F.3d at 578, 583.

Here, as in *Taboas*, Mr. Kim's complained-of statements in the December 11, 2008 email to Mr. Terronez were motivated, at least in part, by a purpose to serve his employer. They were instigated by Mr. Terronez's inquiry as to Plaintiff's work in Mosul, and pertained only to that information sought by Mr. Terronez. As Ms. Lane noted in her Declaration, "[i]t is not only appropriate but encouraged for customers, other supervisors, and peers to provide feedback to an employee's supervisor during the appraisal period." (Lane Decl. at 2). Plaintiff, who bears the burden of showing that there is a genuine issue of material fact that as to whether Mr. Kim was acting in the scope of his employment, has failed to put on any evidence that Mr. Kim was entirely motivated by his own purposes, and not in any part by a desire to serve his employer. Plaintiff's unsupported allegations are not sufficient to show that Mr. Kim was entirely motivated by malice toward Plaintiff, especially where, as here, Defendant has put on evidence that Mr. Terronez sought the information provided by Mr. Kim in the December 11, 2008 email, and that Mr. Kim's communications were of the sort that both Mr. Terronez and Ms. Lane would expect to see between supervisors.[8]  *See Taboas*, 149 F.3d at 582-83.

---

[8]  Moreover, as noted above, Mr. Kim's email did not even allege that Plaintiff had lied about his duties, as Plaintiff states in his Complaint. Instead, Mr. Kim indicated that, as he had not been informed that Plaintiff was performing these duties, he could not confirm that he had performed them, and then expressed his concerns that Plaintiff's performing these other duties might indicate the existence of other problems. (Doc. 13-1 at 8; Terronez Decl. at 2).

## CONCLUSION

The Court has, *sua sponte*, reconsidered the portion of Magistrate Judge Gorman's January 21, 2010 Order granting the United States' Motion to Substitute itself as Defendant, and hereby AFFIRMS that Order. The United States was properly substituted as Defendant in this case pursuant to 28 U.S.C. § 2679(d)(1). This matter is REFERRED to Magistrate Judge Gorman for further pretrial proceedings.

IT IS SO ORDERED.


Entered this 18th day of August, 2010.


                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                  United States Senior District Judge